### 73691. WILSON v. WILLARD.
(358 SE2d 859)

POPE, Judge.

This is an appeal from the trial court's de novo hearing in which the court granted appellee Willard's petition for letters of administration on the estate of Jackie Wilson. The decedent, Jackie Wilson, was a renowned singer and entertainer. Wilson suffered a heart attack and stroke while performing in New Jersey on September 29, 1975 and remained comatose and incompetent from that date until his death on January 21, 1984. Appellant, decedent's legally separated wife, was

appointed guardian of the person of Jackie Wilson in 1978 by the Surrogate of Camden County, New Jersey. Shortly after his death, appellant was granted letters of administration on the estate of Jackie Wilson by the appropriate New Jersey court.

In 1968 the decedent entered into a separation agreement with appellant which included an agreement to pay permanent alimony. Even though Wilson and the appellant were never legally divorced, in 1971 Wilson attempted to enter into a ceremonial marriage with Lennie B. Wilson. From 1971 to the date of his stroke, Jackie Wilson lived with Lennie B. Wilson and fathered two children from that relationship. From 1972 until the date of his stroke, the decedent resided with Lennie B. Wilson in Georgia. Appellee was retained by Lennie B. Wilson, acting on behalf of her two minor children, to petition the Probate Court of Cobb County for letters of administration on the estate of Jackie Wilson. Appellant filed a caveat to that petition since letters of administration had already been issued to her in the state of New Jersey.

1. Appellant maintains that the Georgia court is required by Article IV, Section I, of the United States Constitution to grant full faith and credit to the order of the New Jersey Court awarding letters of administration to appellant. The trial court based its award upon a finding that at the time the decedent suffered his disabling stroke, and therefore at the time of his death, the decedent was domiciled in Georgia and not in New Jersey. In determining the issue of domicile, the Georgia court was not constrained by the previous order of the New Jersey court. See *Williams v. North Carolina*, 325 U. S. 226 (65 SC 1092, 89 LE 1577) (1945); *Tilt v. Kelsey*, 207 U. S. 43 (28 SC 1, 52 LE 95) (1907). Since the New Jersey order did not recite any finding of domicile, one is not to be presumed. *Thormann v. Frame*, 176 U. S. 350 (20 SC 446, 44 LE 500) (1900). Even if a finding of domicile is implied by the New Jersey order, the Full Faith and Credit Clause of the United States Constitution allows a state in disposing of local assets of a decedent to determine the question of domicile anew, even if the re-examination of the issue results in conflicting decisions. *Riley v. New York Trust Co.*, 315 U. S. 343 (62 SC 608, 86 LE 885) (1942). The New Jersey proceeding "amounted to no more than an ex parte application for letters of administration" which would have res judicata effect only as an in rem judgment applying to property within that state. *Thormann v. Frame*, supra at 354. The trial court expressly recognized the jurisdiction and governing authority of the New Jersey court for the limited purpose of administering those assets of the estate found in the state of New Jersey. However, the Georgia court was not required to give full faith and credit to any findings or presumptions made by the New Jersey court on the issue of domicile.

2. Appellant maintains the trial court erred in finding the decedent entered into a common law marriage with Lennie B. Wilson which, even though void because of his inability to marry, would serve to legitimate the children of that relationship. Conflicting testimony was presented on the factual issue of whether the parties held themselves out to be married and exhibited an intent to be married so as to establish a marriage at common law. We find sufficient evidence existed to support the trial court's finding that the decedent entered into a void common law marriage. Therefore, this finding will not be disturbed. See *Askew v. Askew*, 212 Ga. 46 (2) (90 SE2d 409) (1955); *Smith's Properties v. Munford, Inc.*, 165 Ga. App. 204 (1) (300 SE2d 3) (1983).

3. Likewise, we will not disturb the trial court's finding that the decedent was domiciled in Georgia at the time of his death. Sufficient evidence existed for the trial court to find decedent was a resident of Georgia at the time of his stroke.

The court was justified in concluding that once the decedent became ill, he lacked the mental capacity to change his domicile. See *Sorrells v. Sorrells*, 247 Ga. 9 (274 SE2d 314) (1981). Once the decedent became mentally incapacitated, appellant, a resident of New York, was appointed as his guardian. Normally, a person under guardianship is deemed to have the same domicile as the guardian. OCGA § 19-2-5. However, "[a] guardian cannot change the domicile of his ward by a change of his own domicile or in any other fashion so as to interfere with the rules of inheritance . . . of third persons." OCGA § 19-2-6 (b). We uphold the trial court's finding that the decedent remained a resident and domiciliary of the state of Georgia until the date of his death.

4. The trial court properly concluded that appellant had no interest as an heir to the decedent's estate. The evidence shows the appellant entered into a separation agreement with the decedent which included an agreement for the payment of permanent alimony. "After permanent alimony is granted, upon the death of the party liable for the alimony the other party shall not be entitled to any further interest in the estate of the deceased party by virtue of the marriage contract between the parties. . . ." OCGA § 19-6-7; *McKie v. McKie*, 213 Ga. 582 (1) (100 SE2d 580) (1957). This ruling would not affect appellant's status as a creditor of the estate, if such can be shown.

5. Finally, appellant maintains the trial court erred in appointing appellee as administrator of the estate when the surviving spouse and a majority of the heirs at law objected to said appointment and expressed a preference for the appellant. According to the statutory rules for granting letters of administration, the surviving spouse shall be first entitled. OCGA § 53-6-24 (1) (Code 1933, § 113-1202 (1); Ga. L. 1979, p. 1325, § 1; amended Ga. L. 1986, p. 200, § 1). However, as

noted in Division 4, appellant has waived her right to inherit as a surviving spouse by entering into an agreement for permanent alimony. Pursuant to OCGA § 53-6-24 (3), the person selected in writing by a majority of those interested in the distribution of the estate shall be appointed. In this case a majority of the heirs have expressed a preference for the appellant. Nevertheless, appellant is not qualified to serve as administrator of the estate since she is not a resident of this state and is not an heir at law. See OCGA § 53-6-23. The heirs to the estate may select a disinterested person as administrator. OCGA § 53-6-24 (6). In this case, two of decedent's minor children, by and through their natural guardian, have expressed a preference for the appointment of the appellee. Therefore, we uphold the trial court's denial of appellant's petition to administer the estate and the grant of letters of administration to appellee.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED JUNE 4, 1987.

*Benjamin W. Spaulding*, for appellant.
*Wendell K. Willard*, for appellee.